Weldon L. RUSSELL, Jr., Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15351.

United States Court of Appeals
Fifth Circuit.

May 10, 1955.

Rehearing Denied June 20, 1955.

Charles B. Jones, Trout & Jones, Wm. H. Evans, Klett, Bean & Evans, Lubbock, Tex., for appellant.

Heard L. Floore, U. S. Atty., Fred L. Hartman, Asst. U. S. Atty., Ft. Worth, Tex., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted on five counts of an indictment, each count charging that he made, or caused to be made, a false, fictitious and fraudulent statement in a manner within the jurisdiction of the Veterans Administration in violation of Section 1001, Title 18, United States Code.[1] The statements alleged to be false were contained in five Veterans Administration forms numbered 4–1802, which were Applications for Home Loan Guaranty or Insurance; the specific part of said application alleged to be false being the statement that the purpose of each loan was "Purchase of Home".

Appellant procured and furnished to each of five veterans the printed form

---

1. "§ 1001. *Statements or entries generally*

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

of the loan application in question, which was signed in blank by the veteran and returned to the appellant. In some manner not shown by the evidence, the loan applications, blank except for signature, then reached Raymond Thomason, Sr. who caused the blanks to be filled in and filed them with the Veterans Administration for American General Investment Corporation, the proposed lender to the veterans, along with a transmittal letter signed by Raymond Thomason, Sr., requesting the Government to guarantee the loans.

The Veterans Administration, relying upon the information contained in the application, issued a loan guaranty in each case to the lender, but would not have done so, had it known the statement "Purchase of Home", as stated in each application, was not true. Appellant instructed the loan closer to prepare a warranty deed conveying the property to B. B. Hendrix, trustee, and to obtain the veteran's signature simultaneously with the closing of the loan.

Each of the veterans was directed by appellant to go to the office of the loan closer and sign a warranty deed conveying the property to B. B. Hendrix as trustee. Thereafter, each veteran received from appellant a certain sum ($50.00 in all cases except one, who received $150.00) as consideration for signing the application and conveying the property therein described. The appellant paid all closing costs.

Appellant insists that the district court erred in not granting his motion for judgment of acquittal because there was no sufficient evidence to show either the falsity of the statement that the purpose of the loan was "Purchase of Home", or that such statement was made by the appellee or at his insistence.

Appellant complains that the statement "Purchase of Home" does not necessarily imply that the home is intended for occupancy by the veteran making the application. The purpose of the Act was well understood. Cf. Karrell v. United States, 9 Cir., 181 F.2d 981, 985. In the light of such purpose, we think that the jury was amply justified in finding that the quoted phrase meant purchase of a home for the veteran applicant.[2]

Appellant did not himself directly make the false statement, and there is no evidence that he ever actually knew of its precise wording. Appellant therefore insists that he cannot be convicted for having either made, or caused to be made, such statement. After careful consideration, we agree with the district court that the evidence was sufficient for submission to the jury.

Under the federal statute, 18 U.S.C.A. 2,[3] an accessory before the fact becomes a principal; an aider and abettor may be indicted, tried and convicted as a principal. Jin Fuey Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214; Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 855, affirmed 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919; United States v. Knickerbocker Fur Coat

---

2. "§ 694a. *Loans for homes; amount of guarantee*

"(a) Any loan made to a veteran under this subchapter, the proceeds of which are to be used for purchasing residential property or constructing a dwelling *to be occupied as his home* or for the purpose of making repairs, alterations, or improvements in property owned by him and *occupied as his home*, is automatically guaranteed if made pursuant to the provisions of this subchapter, including the following: * * *." (Em-

phasis supplied.) 38 U.S.C.A. § 694a (a).

3. "§ 2. *Principals*
"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.
"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Co., 2 Cir., 66 F.2d 388, 390; Colbeck v. United States, 7 Cir., 10 F.2d 401, 403. There must exist a community of unlawful intent between the accessory and the perpetrator of the crime, but "* * an accessory is liable for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him", 22 C.J.S., Criminal Law, § 92, p. 164. Cf. Collins v. United States, 5 Cir., 65 F.2d 545, 547, with Morei v. United States, 6 Cir., 127 F.2d 827, 831. It is not essential that the accessory know the modus operandi of the principal. Keliher v. United States, 1 Cir., 193 F. 8, 17. In each of the cases of Todorow v. United States, 9 Cir., 173 F.2d 439, 443, and Turner v. United States, 9 Cir., 202 F.2d 523, the evidence was held sufficient to show that the defendant caused the false statements there involved to be made to the Veterans Administration.

In the case at bar, the appellant was in on the commission of the offense from its inception and after its conclusion. In seeking out veterans who would "sell their GI rights",[4] he specified that the veteran had to convey the property to the appellant or someone else (at his direction) before the veteran could be paid. He furnished the blank applications for home loan guaranties, induced the veterans to sign them for a promised consideration, and the executed blank forms were returned to him. Thereafter, the executed blank forms in some manner left appellant's possession and reached Thomason who caused them to be filled in with the false statement that "Purchase of Home" was the purpose of the loan, and filed the applications with the Veterans Administration. That there was some community of interest between Thomason and the appellant is shown by the fact that in each instance the appellant paid all closing costs and simultaneously with the closing of the loan

obtained the veteran's signature to a warranty deed conveying the property described in the application to B. B. Hendrix, trustee, and paid the consideration promised to the veteran.

We conclude that the district court properly denied the motion for judgment of acquittal, and the judgment is

Affirmed.

---

4. In one case the veteran testified that the defendant "approached me about buying my rights for a home."