**UNITED STATES of America, Plaintiff,**

v.

**Joseph L. DeFILIPPO, Defendant.**

**No. 85 Civ. 7623 (RWS).**

United States District Court, S.D. New York.

Nov. 11, 1986.

Rudolph W. Giuliani, U.S. Atty. S.D.N.Y. by Beverly Sherman Nash, Asst. U.S. Atty., New York City, for plaintiff.

Alfred V. Greco, New York City, for defendant.

SWEET, District Judge.

Plaintiff United States of America (the "Government") has moved for summary judgment under Rule 56, Fed.R.Civ.P., against defendant Joseph L. DeFilippo ("DeFilippo") in the amount of $12,645.56 plus accrued interest at four percent per annum from February 18, 1985, arising out of a home loan obtained by DeFilippo and guaranteed by the Veterans Administration. On the following findings and conclusions, the motion is granted.

**Prior Proceedings**

This action was filed by the Government on September 26, 1985 alleging that DeFilippo owed the Veterans Administration (the "Administration") $12,500 plus interest, the amount paid by the Administration under its guaranty of the mortgage which had been obtained by DeFilippo and which has been foreclosed.

On February 26, 1986, DeFilippo moved to amend his answer to include a defense of the statute of limitations. In that connection, the Government took his deposition on March 13, 1985, at which time DeFilippo stated that he had purchased the property underlying the mortgage as an investment with a business associate, that he had never lived there and had never intended to live there. DeFilippo further stated that he had never seen the property. He also testified that he did not realize what he had signed.

On March 25, 1986 the Government moved to amend its complaint to add a claim of common law fraud and filed its amended complaint on April 18, 1986. An amended answer was filed on May 27, 1986, alleging that the action is barred by the statute of limitations and by the Government's failure to notify DeFilippo of the foreclosure. This motion was heard and finally submitted on September 12, 1986.

**The Facts**

On March 10, 1971, the Administration received a one-page "Application for Home Loan Guaranty," VA Form 26–1802a, signed by DeFilippo who had been president of his own business for several preceeding years. The application, after setting out the particulars of the loan, the

purpose of the loan,[1] security for the loan and the personal and financial status of DeFilippo, contains a section called "Certifications." The section states, in pertinent part:

THE UNDERSIGNED VETERAN CERTIFIES THAT:

The foregoing is true and complete to the best of my knowledge and belief.... 22A. The purpose of this proposed loan is to finance the [x] PURCHASE [ ] CONSTRUCTION of the residential property identified herein which I now actually occupy as my home or intend to move into and occupy as my home within a reasonable period of time after completion of the loan.

\*   \*   \*   \*   \*   \*

24. SIGNATURE OF VETERAN (Read certification carefully before signing)

The application was signed by DeFilippo immediately under the language set forth above. His signature not only appears on the documents directly below the certifications, but in the very space he signed are the words, "Read Certification Carefully Before Signing."

Based on the certification and the other information submitted, the Administration approved DeFilippo's application for a Home Loan Guaranty and issued a Loan Guaranty Certificate. The closing occurred on April 20, 1971. At that time DeFilippo signed the mortgage and the mortgage bond and a "Borrower's Statement of Liability-GI Loan," VA Form 26–8106. That document informed DeFilippo that he was obligated to repay the loan, even if he transferred the property. It also advised him that he would not be relieved from liability on any guaranty claim which the Administration may become required to pay the lender. He also signed a "Certification of Loan Disbursement," which repeated the certification language set out above to the effect that the purpose of the loan was to finance the purchase of the residential property which he then occupied

and intended to occupy as his home, or which he intended to so occupy within a reasonable time after closing. Again, DeFilippo's signature appears directly below the certification.

On December 21, 1971, Jacksonville National Bank, the holder of the mortgage note, notified the Administration that the required payments had not been made as of September, 1971, and that the loan was in default, and on two other occasions, April 16, 1973 and September 6, 1974, the mortgage holder notified the Administration that the mortgage payments were in arrears. The Administration was also notified by the holder that ownership of the property had been transferred. DeFilippo never so notified the Administration. On both latter occasions, payments were brought current and the account was reinstated.

On June 1, 1977, a new default in payment on the mortgage occurred, and on February 12, 1978, the holder notified the Administration of its intention to foreclose. The Administration attempted to contact the owners to notify them of the pending foreclosure, but were unsuccessful since the property address was the only address that it had for them.

On April 10, 1978, the attorneys handling the mortgage foreclosure action for the mortgage holder notified the Administration that they were unable to locate DeFilippo, the former owner, despite efforts to do so and requested permission to omit him as a defendant in the foreclosure action for that reason. The Administration permitted the attorneys to drop DeFilippo from the foreclosure proceedings, so long as the Administration could still obtain good title to the property. Thereafter, DeFilippo was omitted from the foreclosure proceeding. The property at 460 East 138th Street, Bronx, was foreclosed on December 21, 1978. Because the assessed value of the property was less than the unguaranteed

---

1. DeFilippo checked a box which stated that the purpose of the loan was to "purchase existing home—previously occupied," leaving blank the box stating his purpose to be "purchase existing home—not previously occupied."

portion of the loan, the Administration did not acquire the property but paid $12,500 on the guaranty on August 14, 1979. Because DeFilippo continued to be liable on the loan in accordance with the documents he signed, the Administration on October 5, 1979 established an account receivable against him for $12,500, the amount of the guaranty.

When the Administration finally located a viable address for DeFilippo in 1982, it notified him of his outstanding obligation and requested payment. When no payment was received, the matter was referred to the United States Attorney's Office for the Southern District of New York, in March, 1985, for legal action to collect the amount due. On March 13, 1985, the United States Attorney's Office sent a demand letter to DeFilippo at his current address. When no response was received, this action was commenced on September 26, 1985, alleging that DeFilippo was indebted to the Administration in the amount of $12,500 plus interest in the sum of $154.56, with interest accruing at the rate of four percent per annum, based on the Administration's payment on the guaranty.

**Conclusions**

The proper inquiry in deciding a motion for summary judgment is

whether there is the need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986).

Summary judgment is appropriate here since the facts upon which the Government relies are undisputed, and DeFilippo has not set forth any evidentiary facts upon which it could be inferred that his certification was unknowing. He claims only that he was unaware of the requirement of residential use, not having read the documents he signed or having been advised orally of the requirement. A naked sworn statement to that effect unsupported by any evidentiary facts is not sufficient to warrant the jury in finding in favor of DeFilippo, in the face of undisputed evidence that DeFilippo, an experienced businessman, signed an application for a "Home Loan Guaranty" when he had never seen the property for which he sought the loan and never intended to live there. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose").

The guaranteed home loan program was first authorized by the Servicemen's Readjustment Act of 1944 to assist veterans in readjusting to civilian life after their war service and has been extended repeatedly with various modifications not relevant to this proceeding. *E.g.,* 1960 U.S.Code Cong. & Ad.News 3199–3203. One factor that has not changed, however, is that the loan *must* be used for the purchase of a property that the veteran intends to occupy as his home. 1944 U.S.Code Cong.Service 313; 38 U.S.C. § 1804; *United States v. DeWitt,* 265 F.2d 393, 397–98 (5th Cir.), *cert. denied,* 361 U.S. 866, 80 S.Ct. 121, 4 L.Ed.2d 105 (1959); *Russell v. United States,* 222 F.2d 197, 198 (5th Cir.1955).

DeFilippo's obligations are established by unambiguous written instruments—the Application for Home Loan Guaranty, the Certification of Loan Disbursement and the Borrower's Statement of Liability—GI Loan. DeFilippo obtained a Home Loan Guaranty from the Administration based on his certification in both the Application for Home Loan Guaranty and the Certification of Loan Disbursement that he actually occupied the residential property being purchased as his home, or intended to do so within a reasonable period of time after completion of the loan.

▮▮▮ No statute is necessary to authorize the United States to recover funds, the

illegal payment of which was induced by fraud. *United States v. Silliman*, 167 F.2d 607, 611 (3d Cir.), *cert. denied*, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948). Under New York law, a *prima facie* case of fraud is made on a showing of a representation as to a material fact, that the fact represented was false and was made knowing it was false, and that the party claiming to be injured relied on that representation to their detriment. *Mallis v. Bankers Trust Co.*, 615 F.2d 68 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). The time within which one can commence an action based on such fraud under New York law is within two years after discovery of the fraud. N.Y. Civ.Prac. Law § 203(f). *See ITT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 928–29 (2d Cir.1980); *Triangle Underwriters, Inc. v. Honeywell*, 604 F.2d 737 (2d Cir.1979). Having first learned of DeFilippo's material misrepresentation at his deposition on March 13, 1986, the second cause of action alleged in the amended complaint for common law fraud arose at that date. *United States v. Borin*, 209 F.2d 145, 148 (5th Cir.), *cert. denied*, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed.2d 647 (1954). Accordingly, this action is timely.

The amended answer filed by DeFilippo does not deny that he applied for and received a home loan guaranty, or that he signed the Borrower's Statement of Liability—GI Loan. Even if the first cause of action is barred by the statute of limitations, having been filed more than six years after the Administration performed under its guaranty, a proposition which the Government disputes on the ground its accounts receivable was established within the period, on October 5, 1979. The second cause of action for common law fraud accrued within two years of the filing of the amended complaint, with the actual discovery of the fraud on March 13, 1986.

Once the loan guaranty had been approved, the Administration had no reason and no obligation to check on the whereabouts of the debtor, until such time as it is called upon to possibly make payment un-der the guaranty. By that time, efforts to locate DeFilippo were unsuccessful. Had he ever resided in the home for which the loan was guaranteed, his whereabouts might have been traced in time to notify him of the pending foreclosure proceeding. The Government, therefore, had no basis to discover the fraud earlier than it did.

Since DeFilippo was no longer the record owner of the property at the time of the foreclosure in 1978, there was no legal requirement to include him as a defendant in the foreclosure proceeding. *See* N.Y. Real Prop. Acts. § 1311. Further, the Borrower's Statement of Liability—GI Loan provides that DeFilippo remained liable to repay the Administration since the Administration was required to pay on the guaranty. Inclusion of someone as a defendant in a mortgage foreclosure proceeding who is liable for payment of the debt secured by the mortgage is merely permissive, not mandatory. *See* N.Y. Real Prop. Acts. § 1313. Hence the failure to include DeFilippo is not an affirmative defense barring recovery of the amounts paid by the Administration to the lender on the guaranty.

For the foregoing reasons, the Government's motion for summary judgment is granted.

IT IS SO ORDERED.

