**UNITED STATES of America**

v.

**Raymond EVERS and Joseph DiRosa.**

**Appeal of Joseph DiROSA.**

**No. 71–1187.**

United States Court of Appeals, Third Circuit.

Argued June 22, 1971.

Decided Sept. 30, 1971.

---

Louis Lipschitz, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Edwin E. Naythons, Asst. U. S. Atty., Chief, Appellate Section, Philadelphia, Pa., on the brief), for appellee.

Before VAN DUSEN and ROSENN, Circuit Judges, and KRAFT, District Judge.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The defendant-appellant, Joseph DiRosa, was indicted along with one Raymond Evers, in a joint indictment charging them both as principals with unlawfully selling 759.65 grams of cocaine, not in the original stamped packages in violation of 26 U.S.C., § 4704(a).[1] At the conclusion of the trial without a jury on February 17, 1970, appellant's motion for judgment of acquittal was denied and both defendants were adjudged guilty. On January 13, 1971, appellant was sentenced to five years imprisonment. This appeal followed.

The primary question we are called upon to determine in this appeal is whether the evidence in the record is sufficient to support DiRosa's conviction. It is a well established principle of law that on a motion for judgment of acquittal the inferences and view of the evidence most favorable to the Government must be taken. United States v. Feldman, 425 F.2d 688 (3d Cir. 1970). See also United States v. DeCavalcante, 440 F.2d 1264, 1273 (3d Cir. 1971), United States v. Pratt, 429 F.2d 690 (3d Cir. 1970).

An examination of the evidence adduced at trial discloses that on December 31, 1968, Agent Haney of the Philadelphia Bureau of Narcotics and Dangerous Drugs received a telephone call from an informant, Adolph Wilkerson, pertaining to a proposed sale of narcotics which was to take place the following day. Pursuant to this phone call, Haney and another agent, Wilder, met with Wilkerson on January 1, 1969, in the vicinity of Fifth and Federal Streets in South Philadelphia. After a short discussion with the agents, Wilkerson proceeded to his residence nearby at 332 Manton Street and the two agents stationed themselves in their car which was parked at the corner of Fourth and Manton. Accompanying the agents was an officer of the Philadelphia Police Department, who was parked forty or fifty feet away on the opposite corner. At approximately 2:00 p.m., Wilkerson left his house and proceeded to the government vehicle in which the agents were seated. Wilkerson informed the agents "that he had just received a call from them (the prospective sellers) and that they would be a little late."

Wilkerson returned to his home and, sometime around 2:20 p.m., a 1964 Oldsmobile pulled up in front of his house. The automobile was driven by

---

1. 26 U.S.C. § 4704(a) provides as follows:
   "(a) General requirement—It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

the appellant DiRosa and contained his co-defendant, Evers, as a passenger. Evers got out of the car and went up to the front porch of 332 Manton Street where Wilkerson was waiting. After a brief conversation with Wilkerson, Evers got back into the car and DiRosa drove away. Appellant apparently only drove around the block because, shortly after leaving the front of Wilkerson's house, the Oldsmobile containing the two defendants returned to Manton Street and pulled up approximately one hundred feet behind the agents' car. Wilkerson left his house, walked past the agents' car and got into the defendants' vehicle. DiRosa, still at the wheel, then immediately drove the Oldsmobile, containing himself, Evers and Wilkerson, past the agents' car, across the intersection, and parked on the opposite side of the street.

After a brief passage of time, Wilkerson got out of the Oldsmobile, walked back to the agents' vehicle and thereupon produced a tinfoil packet containing a crystal-like powder resembling cocaine. After speaking with Wilkerson, Haney got out of the agents' car and, carrying an attache case, approached the Oldsmobile in which Evers and DiRosa were sitting. As Haney reached the defendants' car the door was opened and the agent said that he "had the bread if they had the stuff." In the colloquialism of the day, this conveyed the message that he had the money ("bread") for the purchase if they had the drugs. The prearranged price was $50,000 for the cocaine.[2] Thereupon, Evers reached into the back of the Oldsmobile and opened an attache case which was sitting behind him on the back seat. Agent Haney testified that the attache case contained a number of packets similar to the one given him by Wilkerson. Haney dropped his packet into the case and, with the aid of Agent Wilder and the other police officer, immediately placed the two defendants under arrest.

Internal Revenue stamps were neither affixed to the attache case nor to any of the 20 packets of cocaine contained therein. The defendants were subsequently indicted and prosecuted under 26 U.S.C. § 4704(a). Neither of the defendants gave any testimony in his own behalf.

Possession of narcotics is not, in itself, a proscribed offense under Section 4704(a), 26 U.S.C.A., nor is "possession" a necessary element of the substantive crime interdicted by the statute. See United States v. LaRocca, 224 F.2d 859, 860 (2d Cir. 1955). The second clause of Section 4704(a) does, however, permit a presumption that one found in possession of narcotic drugs not bearing the requisite tax paid stamps is in violation of the statute.[3] This presumption is prima facie evidence of a violation of § 4704(a) and, if not rebutted, is sufficient to support a conviction. United States v. Hickman, 426 F.2d 515 (7th Cir. 1970). Constructive as well as actual possession suffices to trigger this presumption. Mack v. United States, 326 F.2d 481 (8th Cir. 1964). Constructive possession presupposes a power to exercise dominion and control over the narcotics, and is susceptible of proof by either direct or circumstantial evidence. Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962); United States v. Malfi, 264 F.2d 147 (3rd Cir. 1959). Possession is not required to be exclusive since the power to control or exercise dominion over narcotics is capable of being shared. Mack v. United States, supra.

Appellant concedes that mere possession, actual or constructive, is sufficient to sustain a conviction under 4704(a). He argues, however, that the Government has failed to prove that he was anything more than a "passive spectator" at the attempted sale, that the evidence does not show that he took any knowing part in the transaction or that

2. The narcotics involved consisted of slightly less than two pounds of cocaine contained in 20 tinfoil packets.

3. See footnote 1.

he ever had possession of the narcotics. In support of this contention he relies on a number of cases, the most important of which are: Murray v. United States, 403 F.2d 694 (9th Cir. 1968); Orozco-Vasquez v. United States, 344 F. 2d 827 (9th Cir. 1965); and Guevara v. United States, 242 F.2d 745 (5th Cir. 1957). Although each of these cases states principles of law with which we are not in disagreement, each one is distinguishable on its facts from the case sub judice.

Murray v. United States, supra, is inapposite. In reversing the conviction of one of two brothers convicted for possession of heroin, the court observed that:

> There was no direct evidence that Lonnie knew anything about the heroin concealed on Johnnie's person, and *there is no circumstantial evidence from which that knowledge can be presumed or inferred.* (emphasis added) 403 F.2d at 696.

In Orozco-Vasquez v. United States, supra, the only evidence against the defendant was that he had driven his girl friend to and from an appointment where narcotics were sold. He had parked the automobile within a block of where his girl friend consummated the transaction, but he was not present at the sale, nor did he participate therein. The court, therefore, held that:

> There was never any proof Molano ever had any personal, actual possession of narcotics, nor constructive possession of them, nor knowledge of their presence in someone else's possession in the car he drove (if they were present). 344 F.2d at 829.

Finally, Guevara v. United States, supra, is also distinguishable on its facts. The court therein reversed a conviction for possession of marijuana cigarettes found on the floor of the defendant's car. The police had released an unknown passenger who had been riding with the defendant at the time of his arrest and the discovery of the cigarettes. In response to the defendant's denial of knowledge regarding the cigarettes, the appellate court concluded that the cigarettes could just have easily been the passenger's as the defendant's. Moreover, the court found that the cigarettes were in such position in the car that they could easily have been placed in the unlocked vehicle by any person. Neither of these concerns are present in the case before us.

The record in the case sub judice clearly established a pre-arranged rendezvous between Wilkerson and the proposed drug vendors. DiRosa drove the automobile to the rendezvous at Wilkerson's home. Then, in an obvious attempt to divert anyone who might be trailing him, he executed a series of covert maneuvers with the car. He was present during the preliminary conversations with Wilkerson and he waited in the car with Evers while Wilkerson took the sample packet to the agents' car. He was also present when Evers opened the attache case disclosing its contents of cocaine to Agent Haney. There is no indication that the appellant attempted to dissociate himself from these activities, disclaim his role in them, or that he suffered from any physical inability to see or hear what was transpiring in the automobile.

DiRosa's conduct preliminary to the attempted sale and his presence at the transaction under the foregoing circumstances formed a sufficient basis for the trial judge's determination that DiRosa was not the "passive spectator" suggested by his counsel but, in fact, a knowing participant. Although the evidence does not show that DiRosa was in actual possession of the drugs, his proximity to them and his conduct leading up to the attempted sale disclose that he did have dominion and control over them. The trial court had sufficient evidence from which it could find DiRosa and Evers were in joint constructive possession of the drugs.

We have considered all the appellant's contentions and each of the other cases relied on by him and we find no reversible error. Accordingly, the judgment of conviction by the district court will be affirmed.